IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**RANDALL EPLION,**

      **Plaintiff,**

v.                                                        Case No. 3:18-cv-00978

**SR. TRP. A. T. FARMER;**
**WESTERN REGIONAL JAIL;**
**ELBERT DAVIS (Inmate),**

      **Defendants.**

## PROPOSED FINDS OF FACT AND RECOMMENDATIONS

On May 31, 2018, Randall Eplion ("Eplion"), proceeding *pro se* and incarcerated at Western Regional Jail in Barboursville, West Virginia, filed a complaint against the defendants under 42 U.S.C. § 1983. (ECF No. 2). Currently pending are Plaintiff's Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1), and the initial screening of the complaint pursuant to 28 U.S.C. §§ 1915, 1915A. This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly reviewed the complaint, the undersigned **FINDS** that the complaint fails to state a constitutional claim and further fails to provide any other basis for this Court's subject matter jurisdiction. Therefore, the undersigned **RECOMMENDS** that the presiding District Judge **DENY** the Application to Proceed *in forma pauperis,* as moot; **DISMISS** the complaint; and **REMOVE** this

matter from the docket of the Court.

I. **Complaint**

Eplion alleges that on March 30, 2018, while incarcerated at the Western Regional Jail, he was charged with two felony counts, including malicious assault and assault and battery, related to an attack on another inmate, Defendant Elbert Davis, which occurred in Davis's cell. (ECF No. 2 at 4). Eplion proclaimed his innocence, denying that he had entered Davis's cell and insisting that the two surveillance cameras in the Jail's housing pod would prove the truth of his statements. (*Id.* at 4-5). The charges were subsequently dropped on April 6, 2018 after Eplion demanded a preliminary hearing. (*Id.* at 5). Nevertheless, the charges against Eplion were the subject of a news broadcast, allegedly harming his reputation and the reputation of his family. For relief, Eplion asks that he be awarded monetary compensation "due to the damage inflicted towards [his] character concerning charges [he] was innocent of" and that his name be removed from the news or internet concerning the charges. (*Id.*).

II. **Standard of Review**

Pursuant to the provisions of 28 U.S.C. § 1915, the Court must screen each case in which a prisoner seeks to proceed *in forma pauperis* (without prepayment of fees and costs). In addition, pursuant to 28 U.S.C. § 1915A, the Court must screen each case in which "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e). A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967);

2

*Denton v. Hernandez,* 504 U.S. 25 (1992), or lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Likewise, a complaint fails to state a compensable claim, and therefore should be dismissed, when viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court further explained the "plausibility" standard in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679.

Title 42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n. 3 (1979)). Section 1983 provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." *Id.* Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961), *overruled on other grounds by Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1978). In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of State law. *Perrin v. Nicholson*, C/A No. 9:10-1111-HFF-BM,

2010 WL 3893792, at *2 (D.S.C. Sept. 8, 2010); *also American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *American Mfr. Mut. Ins. Co.,* 526 U.S. at 50.

In the case of a *pro se* complaint, like the one filed here, the Court must liberally construe the allegations contained therein. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even under this less stringent standard, the complaint must still contain enough factual allegations to support a cause of action that is cognizable in federal court. *Weller v. Department of Social Services,* 901 F.2d 387, 391 (4th Cir. 1990). The Court may not rewrite the complaint to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Discussion

Eplion alleges that false criminal charges were lodged against him, and these charges were broadcast to the public by the media; thereby, harming his reputation and, by association, the reputation of his family. In West Virginia, false written or oral statements that tend to "reflect shame, contumely, and disgrace" upon an individual are prosecuted under the broad category of defamation. Syl. pt. 1, *Sprouse v. Clay Commc'n, Inc.,* 211 S.E.2d 674 (W. Va. 1975); *Workman v. Kroger Ltd. Partnership I*, Case No. 5:06-cv-0446, 2007 WL 2984698, *4 (S.D.W. Va. Oct. 11, 2007) (citing *Greenfield v. Schmidt Baking Co., Inc.*, 485 S.E. 2d 391, 399 (W. Va. 1997)). The law is well settled that

4

defamation alone does not rise to the level of a constitutional violation. *Paul v. Davis,* 42 U.S. 693, 712 (1976); *also Garner v. Carteret Cty. Dist. Attorney*, 2017 WL 9478520, at *2–3 (E.D.N.C. May 11, 2017), *report and recommendation adopted,* No. 5:16-CT-3227-D, 2017 WL 3017703 (E.D.N.C. July 17, 2017), *aff'd,* 704 Fed. Appx. 278 (4th Cir. 2017) ("Moreover, there is no federal constitutional right to be free from defamation or slander."). Although Eplion does not identify the constitutional right he claims was violated upon publication of the allegedly baseless criminal charges, some courts have considered defamation in the context of the right to due process. Nonetheless, "[w]ith respect to Section 1983 claims for defamation or slander, even palpably false statements by a governmental actor are not cognizable if the *only injury* is to the plaintiff's reputation." *O'Neal v. Spota*, No. 16CV579JFBGRB, 2017 WL 118044, at *3 (E.D.N.Y. Jan. 12, 2017) (emphasis added). In other words, garden variety defamation claims are not generally prosecutable under 42 U.S.C. § 1983, because damage to reputation, by itself, does not amount to an injury of constitutional magnitude. *See James v. Lancaster Sheriff's Dep't*, No. CA 0:13-210-JFA-SVH, 2013 WL 3938962, at *3 (D.S.C. July 30, 2013) ("Harm to a person's reputation does not deprive him of any "liberty" or "property" interests protected by the Due Process Clause."); *and Vaughan v. Foltz*, No. 2:16-CV-61-FL, 2017 WL 4872484, at *7 (E.D.N.C. Oct. 27, 2017), *reconsideration denied,* No. 2:16-CV-61-FL, 2018 WL 1801419 (E.D.N.C. Apr. 16, 2018)) ("However, the Supreme Court has held that reputation alone does not implicate any 'liberty' or 'property' interest sufficient to invoke the procedural protection for the due process clause and something more than simple defamation, for example '**some more tangible interests such as employment,**' must be involved to establish a claim under § 1983. *Paul v. Davis*, 424 U.S. 693, 701 (1976) (emphasis in original).

In this case, Eplion's only claimed injury is to his reputation. Therefore, the undersigned **FINDS** that Eplion's complaint fails to state a cognizable constitutional claim that may be pursued under 42 U.S.C. § 1983. As such, his complaint should be dismissed.

Moreover, even if Eplion had asserted a cognizable constitutional claim, the undersigned **FINDS** that his complaint suffers from other defects that prevent him from proceeding in this Court. To begin, with respect to Defendant Farmer, Eplion's complaint lacks even a single factual allegation to connect Farmer to the creation, communication, or publication of the allegedly false criminal charges against Eplion. Without some factual support, Eplion cannot state a claim for relief against Defendant Farmer that is plausible on its face; thus, the complaint must be dismissed against Defendant Farmer.

As to the Western Regional Jail, Eplion is precluded from pursuing relief in this Court, because the Jail is immune from liability under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the United States Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State, itself, and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v.*

*Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will* 491 U.S. at 70); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). Consequently, if Jail is an arm or alter ego of the State of West Virginia, it is immune from liability in federal court. The query is easy; established law confirms that the Jail is an arm of the State of West Virginia. *See Hall v. Pszczolkowski*, No. 5:14CV150, 2015 WL 6742107, at *3 (N.D.W. Va. Nov. 4, 2015) (holding that "state detention facilities are 'arms of the state'") (citing *Preval v. Reno*, 203 F.3d 821 (Table), No. 99-6950, 2000 WL 20591, *1 (4th Cir. Jan. 13, 2000) (unpublished per curiam)); *see, also, Kinder v. PrimeCare Med., Inc.,* No. 3:13–31596, 2015 WL 1276748, at *2 (S.D.W. Va. Mar. 19, 2015) (dismissing the WRJ from § 1983 suit on Eleventh Amendment grounds); *Skaggs v. W. Reg'l Jail,* No. 3:13–3293, 2014 WL 66645, at *1, *4 (S.D.W. Va. Jan. 8, 2014) (dismissing the WRJ from § 1983 suit and adopting finding that the WRJ is arm of the State for Eleventh Amendment purposes).

Notwithstanding that finding, three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir.2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir. 1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift*

7

*Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the State of West Virginia has not waived its sovereign immunity in this type of suit, and there is no indication that the State would do so now. *See Kinder*, 2015 WL 1276748, at *7; *Skaggs*, 2014 WL 66645, at *5; *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013); *Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W. Va. 1992). Consequently, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73). In *Will*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. 491 U.S. at 65. Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government … unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress

8

must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the Jail is not a state officer, but rather a state entity or agency, the third exception to Eleventh Amendment immunity is likewise inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that lawsuit must name state official as defendant, not state agency); *Chafin*, 2013 WL 3716673, at *5

(recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction").

In sum, since none of the exceptions apply, the Jail is shielded by the Eleventh Amendment's sovereign immunity from Eplion's § 1983 claims and should be dismissed on that ground, as well.

Finally, Eplion sues Elbert Davis, the inmate who was the victim of the attack. Eplion provides no factual allegations to establish that Defendant Davis played any part in initiating the criminal charges against Eplion, or more importantly, publishing the charges to the general public. However, even if Davis did have a role in the publication, Eplion includes no allegations in the complaint that Davis acted on behalf of the State of West Virginia or under color of state law. "Purely private conduct, no matter how wrongful, injurious, fraudulent, or discriminatory, is not actionable under 42 U.S.C. § 1983." *See Perrin* 2010 WL 3893792, at *2; *also Burton v. Wilmington Parking Authority*, 365 U.S. 715, 721 (1961). Accordingly, without facts to establish that Davis acted under color of state law, Eplion cannot maintain his § 1983 complaint against Davis; accordingly, the complaint must be dismissed against him.

At most, Eplion asserts a garden variety defamation case under West Virginia law. Given that he fails to establish this Court's subject matter jurisdiction over the, the complaint should be dismissed in its entirety.

## IV. Proposal and Recommendations

For the reasons set forth above, the undersigned **PROPOSES** that the presiding District Judge accept and adopt the findings herein and respectfully **RECOMMENDS**

that the District Judge **DENY** Plaintiff's Application to Proceed *in forma pauperis,* as moot; **DISMISS** the complaint; and **REMOVE** this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff.

**FILED:** August 6, 2018

Cheryl A. Eifert
United States Magistrate Judge